# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

_____

### No. ACM S32776

_____

### UNITED STATES
*Appellee*

**v.**

### Hannes MARSCHALEK
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 17 April 2026[1]

_____

*Military Judge*: Jeremy L. Mooney.

*Sentence*: Sentence adjudged 25 October 2023 by SpCM convened at Royal Air Force Lakenheath, United Kingdom. Sentence entered by military judge on 11 December 2023 and reentered on 7 February 2024: Bad-conduct discharge, confinement for two months, and reduction to E-1.

*For Appellant*: Captain Joshua L. Lopes, USAF (argued); Colonel Pilar G. Wennrich, USAF; Lieutenant Colonel Anthony J. Ghiotto, USAF; Major Samantha M. Castanien, USAF.

*For Appellee*: Major Regina M.B. Henenlotter, USAF (argued); Lieutenant Colonel Jenny A. Liabenow, USAF; Major Allison R. Gish, USAF; Major Vanessa Bairos, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

---

[1] Due to a lapse in appropriated funds in effect at the time, the court heard oral argument in this case in its courtroom on 29 October 2025 instead of being able to conduct it as part of its outreach program; therefore, the students and their supervising attorneys from University of Denver Sturm College of Law participated virtually.

*Amicus Curiae for Appellant*: Alexander Van Wagoner (law student, argued); Jillian Romps (law student, argued); Jonah Kunisch (law student); Katherine Steefel, Esquire (supervising attorney)—University of Denver Sturm College of Law, Denver, Colorado.

*Amicus Curiae for Appellee*: Ari Klotas (law student, argued); Kamilla Vaczi (law student); Justin Marceau, Esquire (supervising attorney)—University of Denver Sturm College of Law, Denver, Colorado.[2]

Before JOHNSON, GRUEN, and MORGAN, *Appellate Military Judges*.

Senior Judge GRUEN delivered the opinion of the court, in which Chief Judge JOHNSON joined. Chief Judge JOHNSON filed a separate opinion concurring in part and concurring dubitante in part. Judge MORGAN filed a separate dissenting opinion.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

GRUEN, Senior Judge:

Appellant was found guilty by a military judge, consistent with his pleas, of one specification of indecent conduct in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[3] The court-martial sentenced Appellant to a bad-conduct discharge, confinement for two months, and reduction to the grade of E-1. Appellant requested the convening authority defer the adjudged reduction in grade and automatic forfeitures until entry of judgment. The convening authority denied both requests. Appellant also requested waiver of all automatic forfeitures. The convening authority waived all automatic forfeitures for a period of six months, release from confinement, or expiration of term of service, whichever was sooner, with the waiver commencing on the date the military judge signed the entry of judgment. The $1,278.40 pay per month was to be directed to be paid to Appellant's spouse for the benefit of herself and Appellant's daughter. The convening authority took no action on the findings and approved the sentence in its entirety.

Appellant raises four issues on appeal, which we have reworded: (1) whether Appellant's conviction under Article 134, UCMJ, was barred by the

_____

[2] Both supervising attorneys for *amicus curiae* students representing Appellant and Appellee were properly admitted *pro hac vice* to practice before this court.

[3] Unless otherwise noted, all references to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

preemption doctrine because the misconduct is covered by Article 120c, UCMJ, 10 U.S.C. § 920c; (2) whether the military judge failed to resolve an issue of fact as to actus reus, and failed to determine whether Appellant's conduct fell within a protected liberty interest, thereby rendering Appellant's guilty plea improvident; (3) whether the military judge erred in admitting Prosecution Exhibits 4 and 5 into evidence as matters in aggravation pursuant to Rule for Courts-Martial (R.C.M.) 1001; and (4) whether Appellant's sentence was inappropriately severe.

On 16 January 2026, we issued our original opinion in this case. *United States v. Marschalek*, No. ACM S32776, 2026 CCA LEXIS 6 (A.F. Ct. Crim. App. 16 Jan. 2026) (unpub. op.). We found Appellant's conviction under Article 134, UCMJ, was barred by the preemption doctrine, set aside the findings of guilty and the sentence, and dismissed Charge II and its Specification without prejudice. Accordingly, we did not reach the remaining issues.[4] The majority of the panel set aside the findings of guilty and the sentence, and all rights, privileges, and property, of which Appellant had been deprived by virtue of the findings and sentence set aside by the decision, were order restored. *Id.* at *16. On 17 February 2026, the Government moved for this court to reconsider its decision. Appellant opposed the motion on 23 February 2026. On 18 March 2026, the court granted the motion.

Upon reconsideration, we vacate our original opinion and find our holding and the dissent remain unchanged. *See id.* at *20 (Morgan, J., dissenting). However, the concurring opinion by Chief Judge Johnson is now concurring in part and concurring dubitante in part. *See id.* (Johnson, C.J., concurring only in the original opinion).

## I. BACKGROUND

Appellant was born in East Germany where he resided as a German citizen until moving to the United States at the age of 15 years. In 2015, upon graduating high school, Appellant enlisted in the United States Air Force (USAF). While in the USAF, Appellant became a United States citizen. In January 2021, Appellant was assigned to duty at Royal Air Force (RAF) Lakenheath,

---

[4] We note this opinion is issued more than 18 months after Appellant's case was docketed with this court, which constitutes a facially unreasonable delay. *See United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Because we set aside the findings and sentence on other grounds, we find it unnecessary to further address this issue in this opinion.

United Kingdom (UK), where he lived with his wife and daughter in Littleport, Ely, UK.

In October 2022, multiple individuals reported seeing a naked man at Appellant's address on several different occasions. Based on these reports, Appellant was interviewed by the local police constable, Cambridgeshire Constabulary, UK. During this interview, Appellant admitted that he often walked around his house naked and would sometimes prop open his front door while naked, but he denied he went outside naked. He also denied that he would linger naked in his doorway. The police constable reported Appellant's conduct to the local Air Force Office of Special Investigations (OSI) detachment.

Subsequent to Appellant's interview with the police constable and further investigation by OSI, Appellant's commander referred five specifications against him to a special court-martial. Three specifications alleged that Appellant, on three separate occasions, exposed himself in an indecent manner while standing in the doorway of his home, in violation of Article 120c, UCMJ (Charge I). Two specifications alleged that Appellant, on two separate occasions, committed indecent conduct by standing outside his residence masturbating in public view, in violation of Article 134, UCMJ (Charge II). Subsequent to referral but before arraignment, the convening authority withdrew and dismissed one specification of Charge I and one specification of Charge II.

On 20 October 2023, prior to his court-martial, Appellant entered into a plea agreement wherein he agreed to plead not guilty to Charge I and its two remaining specifications and to plead guilty to the remaining specification of Charge II with exceptions and substitutions to the wording. The agreement was that in exchange for Appellant's guilty plea, Charge I and its two specifications (Article 120c, UCMJ, offenses) would be withdrawn and dismissed with prejudice. The original Specification of Charge II read in relevant part:

> In that [Appellant], did, . . . at or near Littleport, Ely, United Kingdom, on or about 9 August 2022, commit indecent conduct, to wit: standing outside of his residence masturbating in view of the public, and that said conduct was of a nature to bring discredit upon the armed forces.

The excepted words were "on or about 9 August 2022," "outside," and "masturbating;" the substituted words were "on divers occasions between on or about 9 August 2022 and on or about 4 October 2022," "at or near the door," and "naked." The final version of the specification to which Appellant pleaded guilty read in relevant part:

> In that [Appellant], did, . . . at or near Littleport, Ely, United Kingdom, on divers occasions between on or about 9 August 2022 and on or about 4 October 2022, commit indecent conduct, to wit:

4

> standing at or near the door of his residence naked in view of the
> public, and that said conduct was of a nature to bring discredit
> upon the armed forces.

The military judge accepted Appellant's plea of guilty to the amended specification as set out *supra*.

## II. DISCUSSION

### A. Law

"Whether an offense is preempted depends on statutory interpretation, which is a question of law we review de novo." *United States v. Wheeler*, 77 M.J. 289, 291 (C.A.A.F. 2018) (citation omitted). An appellant's "guilty plea neither forfeits nor waives the issue of preemption." *United States v. Dominguez-Sandoval*, No. ACM 40084, 2022 CCA LEXIS 203, at *15 (A.F. Ct. Crim. App. 31 Mar. 2022) (unpub. op.) (citing *United States v. Robbins*, 52 M.J. 159, 160 (C.A.A.F. 1999)); *see also United States v. Bailey*, No. ACM 39052, 2017 CCA LEXIS 639, at *7 (A.F. Ct. Crim. App. 26 Sep. 2017) (unpub. op.) (finding "*stare decisis* and our own precedent in *Jones*[5] interpreting *Robbins* to stand for the general principle that waiver of preemption is not valid" and holding "preemption was not waived"); *United States v. Costianes*, No. ACM 38868, 2016 CCA LEXIS 391, at *3 (A. F. Ct. Crim. App. 30 Jun. 2016) (citations omitted) (unpub. op.) ("[The a]ppellant's guilty plea neither forfeits nor waives the issue of preemption." (citation omitted)). The basis for the preemption doctrine is the principle that, if Congress has occupied the field for a given type of misconduct, then an allegation under Article 134, UCMJ, fails to state an offense. *See Robbins*, 52 M.J. at 160–61. A claim of preemption, therefore, presents "a question of subject-matter jurisdiction of the trial court and thus cannot be waived by either a plea or failure to object." *United States v. Jones*, 66 M.J. 704, 706 (A.F. Ct. Crim. App. 2008) (citing *Robbins*, 52 M.J. at 160). Notwithstanding Appellant's plea agreement to "waive[ ] all motions that may be waived," R.C.M. 705(c)(1)(B) states "[a] term or condition in a plea agreement shall not be enforced if it deprives the accused of . . . the right to challenge the jurisdiction of the court-martial . . . ."

The preemption doctrine "prohibits application of Article 134[, UCMJ,] to conduct covered by Articles 80 through 132." *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 91.c.(5)(a). In *United States v. Kick*, our superior court explained the preemption doctrine as

> the legal concept that where Congress has occupied the field of
> a given type of misconduct by addressing it in one of the specific

---

[5] *United States v. Jones*, 66 M.J. 704, 706 (A.F. Ct. Crim. App. 2008).

punitive articles of the code, another offense may not be created and punished under Article 134, UCMJ, by simply deleting a vital element. However, simply because the offense charged under Article 134, UCMJ, embraces all but one element of an offense under another article does not trigger operation of the preemption doctrine. In addition, it must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way.

7 M.J. 82, 85 (C.M.A. 1979) (citations omitted); *see also United States v. Erickson*, 61 M.J. 230, 233 (C.A.A.F. 2005) (quoting *Kick,* 7 M.J. at 85, for the same proposition above). Accordingly, the preemption doctrine only precludes prosecution under Article 134, UCMJ, where two elements are met: "(1) 'Congress intended to limit prosecution for . . . a particular area' of misconduct 'to offenses defined in specific articles of the Code,' and (2) 'the offense charged is composed of a residuum of elements of a specific offense.'" *United States v. Curry*, 35 M.J. 359, 360–61 (C.M.A. 1992) (omission in original) (quoting *United States v. McGuinness*, 35 M.J. 149, 151–52 (C.M.A. 1992) (citation omitted)).

## B. Analysis

Appellant contends "the preemption doctrine barred the Government from receiving the benefit of a lower burden of proof" because indecent exposure under Article 120c, UCMJ, requires the Government to prove intent, but indecent conduct under Article 134, UCMJ, does not require the Government to prove intent. Specifically, Appellant bases his position on two reasons: "(1) Congress intended for [Appellant's] conduct to fall under Article 120c," and "(2) this Article 134 offense is a residuum of elements of Article 120c."

The Government contends that Appellant waived the issue of preemption when he agreed to plead guilty to indecent conduct pursuant to Article 134, UCMJ, in exchange for the Government dismissing with prejudice two originally-charged specifications for indecent exposure under Article 120c, UCMJ. Essentially, because of Appellant's plea agreement, he should not now be allowed on appeal to attack "the facial legality of the specification" as this would be "inconsistent with the fair and efficient administration of justice." The Government further contends that "using this type of bait-and-switch tactic" is a "bold assertion" that should cause this court to reevaluate our holding in *Jones*, which held all preemption arguments are jurisdictional in nature and cannot be waived. We do not agree that Appellant waived the issue of preemption and we find no cause to reevaluate our holding in *Jones* at this time.

During Appellant's plea inquiry, the military judge correctly stated the elements of indecent conduct pursuant to Article 134, UCMJ, to which Appellant was pleading guilty, as follows:

> (1) that at or near Littleport, Ely, UK, on divers occasions between on or about 9 August 2022 and on or about 4 October 2022, [Appellant] engaged in certain conduct, to wit: standing at or near the door of [his] residence naked in view of the public;
>
> (2) that the conduct was indecent; and
>
> (3) that under the circumstances, [Appellant's] conduct was of a nature to bring discredit upon the Armed Forces.

*See MCM*, pt. IV, ¶ 104.b.(1)–(3).

The military judge further explained that "[i]ndecent' means that form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." *See MCM*, pt. IV, ¶ 104.c.(1). The military judge informed Appellant that:

> Indecent conduct includes offenses previously proscribed by "[i]ndecent acts with another" except that the presence of another person is no longer required. For purposes of this offense, the words "conduct" and "act" are synonymous.

*See MCM*, pt. IV, ¶ 104.c.(2).

The military judge did not discuss the elements of indecent exposure under Article 120c, UCMJ, with Appellant because Appellant pleaded not guilty to Charge I and its two specifications. However, the elements of indecent exposure the Government would have had to prove pursuant to Article 120c, UCMJ, as charged in this case, include:

> (1) that Appellant did, at or near Littleport, Ely, UK, on or about 9 August 2022, expose his genitalia;
>
> (2) that the exposure was in an indecent manner; and
>
> (3) that the exposure was intentional.

*See MCM*, pt. IV, ¶ 63.b.(6)(a)–(c).

"The term 'indecent manner' means conduct that amounts to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." *MCM*, pt. IV, ¶ 63.a.(d)(6).

### 1. Congressional Intent and Article 134, UCMJ

Article 134, UCMJ, provides for conduct that is not specifically otherwise covered, but nonetheless is "conduct of a nature to bring discredit upon the armed forces." *MCM*, pt. IV, ¶ 91.c.(3). The President, in identifying certain conduct by enumerating various offenses that might be charged under Article 134, UCMJ, has sought to capture conduct that would "injure the reputation of" the Armed Forces, but has recognized the enumerated offenses are not all-inclusive. *See MCM*, pt. IV, ¶¶ 91.c.(3), 91.c.(6)(a). However, the scope of Article 134, UCMJ, is not unlimited as it expressly restricts its reach to conduct "not specifically mentioned in this chapter." *MCM*, pt. IV, ¶ 91.a. Our superior court has interpreted this phrase as prohibiting the charging of conduct as an offense under Article 134, UCMJ, if Congress has already "cover[ed] the field" because they have codified the conduct as an offense in Articles 80 through 132, UCMJ. *United States v. Avery*, 79 M.J. 363, 368–69 (C.A.A.F. 2020).

When considering whether Congress intended to limit prosecution for wrongful conduct within a particular area or field to offenses defined in specific articles of the Code, the United States Court of Appeals for the Armed Forces has held that the intent of Congress may be discerned "through direct legislative language or express legislative history . . . ." *United States v. Anderson*, 68 M.J. 378, 387 (C.A.A.F. 2010). However, in cases where the elements are "essentially the same," there is "no need to delve into legislative history to ascertain anything further about the intent of Congress." *United States v. Grijalva*, 84 M.J. 433, 439 (C.A.A.F. 2024). We find the elements are essentially the same between the charged indecent conduct under Article 134, UCMJ, for which Appellant was convicted and indecent exposure pursuant to Article 120c, UCMJ.

In addition, we note that indecent exposure had been in the Manual for Courts-Martial as an Article 134, UCMJ, offense until it was specifically removed by executive order in 2007. Exec. Order 13,447, 72 Fed. Reg. 56,179 (2 Oct. 2007). Indecent exposure was then subsumed into a new Article 120, UCMJ, provision for sexual offenses committed between 1 October 2007 and 27 June 2012. *See MCM*, App. 21, at A21-2. We further note that indecent exposure was later moved to Article 120c, UCMJ—an article specific to and narrowly covering indecent exposure. *See MCM*, App. 22, at A22-19 (for sexual offenses from 12 June 2012 to 31 December 2018); *see also* Article 120c, UCMJ, *Manual for Courts-Martial, United States* (2024 ed.). Conversely, indecent conduct under Article 134, UCMJ, by definition is meant to cover a broader range of "conduct" than mere exposure. *See MCM*, pt. IV, ¶ 104.c.(2); *see also MCM*, pt. IV, ¶ 104.c.(2) (cited *supra*).

The creation and development of Article 120c, UCMJ, indicates to this court that Congress intended to cover indecent exposure in a complete way under

Article 120c, UCMJ. We do not find the changes above whereby Congress removed indecent exposure from Article 134, UCMJ, and created an enumerated offense was for the purpose of allowing the Government a charging option that would ease the Government's evidentiary burden. We echo the concern of our superior court "that the [G]overnment [c]ould take an extant UCMJ offense and remove a vital element to create a diluted crime under Article 134, UCMJ," and agree that construct "is the very impetus for the preemption doctrine." *Avery*, 79 M.J. at 367 (citing *Wheeler*, 77 M.J. at 293). Where the indecent conduct in question is actually indecent exposure, no more or no less, we find Congress covered the field and the indecent exposure is captured in and properly charged under Article 120c, UCMJ.

### 2. Residuum of Elements

We now consider whether the charged offense of indecent conduct under Article 134, UCMJ, is "composed of a residuum of elements of" indecent exposure Article 120c, UCMJ. *Curry*, 35 M.J. at 361. The Government concedes the first two elements of both offenses are "similar." Government counsel bases their argument that Article 134, UCMJ, is not composed of a residuum of elements on the basis that the third elements differ. We agree with the Government that the third elements differ—because indecent conduct requires proof that Appellant's conduct was of a nature to bring discredit upon the armed forces, whereas indecent exposure requires proof that the exposure was intentional. However, for purposes of analyzing whether there is a residuum of elements, "we do not consider the terminal element of Article 134, UCMJ." *Avery*, 79 M.J. at 367; *see also United States v. McDonald*, No. ARMY 20180387, 2020 LEXIS 101, at *8 n.4 (A. Ct. Crim. App. 31 Mar. 2020) (unpub. op.) (holding they "will not consider the terminal element of Article 134, UCMJ, as neither did our superior court in conducting its [preemption] analysis on the same issue"). That leaves the intent element necessary to prove an indecent exposure Article 120c, UCMJ, offense as the only material difference between the two offenses for our consideration.

While Congress moved indecent exposure to specific Articles—from Article 120, UCMJ, to Article 120c, UCMJ—indecent conduct remained an Article 134, UCMJ, offense. Both Article 120 and Article 120c for the offense of indecent exposure require, as an essential element, that the indecent exposure be intentional in order to be criminal. Article 134, UCMJ, does not require indecent conduct to be intentional. Allowing the Government to charge an offense covered by an enumerated Article as novel under Article 134, UCMJ, in order to avoid the burden of proving a mens rea element, in this case intent, is exactly why the preemption doctrine exists. When "Congress has occupied the field of a given type of misconduct by addressing it in one of the specific punitive arti-

cles of the [C]ode, another offense may not be created and punished under Article 134, UCMJ, by simply deleting a vital element." *Kick*, 7 M.J. at 85 (citation omitted). Because we do not consider the terminal element of Article 134, UCMJ, and because relieving the Government of an evidentiary burden at trial by eliminating an essential element from a congressionally-established, enumerated offense is the reason the preemption doctrine exists, we conclude the Government was preempted from charging Appellant's indecent exposure as indecent conduct in violation of Article 134, UCMJ.

## III. CONCLUSION

The findings of guilty and the sentence are **SET ASIDE**. Charge II and its Specification are **DISMISSED**. All rights, privileges, and property, of which Appellant has been deprived by virtue of the findings and sentence set aside by this decision, are ordered restored. *See* Articles 58a(b), 58b(c), and 75(a), UCMJ, 10 U.S.C. §§ 858a(b), 858b(c), 875(a).

JOHNSON, Chief Judge (concurring in part, concurring dubitante in part):

For the reasons stated in the majority opinion, I agree that the specification alleging Appellant violated Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, by standing at or near the door to his residence naked in view of the public was preempted by the offense of indecent exposure under Article 120c(c), UCMJ, 10 U.S.C. § 920c(c).[1] I further agree that under this court's published precedent in *United States v. Jones*, 66 M.J. 704, 706 (A.F. Ct. Crim. App. 2008), Appellant did not waive the issue of preemption. I write separately for two reasons: first, to briefly explain why, under the principles of *stare decisis*, I am not persuaded this court should overrule *Jones* as the Government urges us to do; and second, to explain my reluctant agreement with the remedy adjudged in the decretal paragraph, in light of my view that dismissal of Charge II and its Specification is unnecessary.

## A. *Stare Decisis*

"The doctrine of stare decisis is 'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *United States v. Rorie*, 58 M.J. 399, 406 (C.A.A.F. 2003) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)).

---

[1] All references to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

"The doctrine is 'most compelling' where courts undertake statutory construction." *Id.* (citing *Hilton v. South Carolina Public Ry. Comm'n*, 502 U.S. 197, 205 (1991); then citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 172 (1989)); *see also United States v. Quick*, 74 M.J. 332, 335 (C.A.A.F. 2015) (quoting *Rorie*, 58 M.J. at 406).

> *Stare decisis* is a principle of decision making, not a rule, and need not be applied when the precedent at issue is "unworkable or . . . badly reasoned." As a general matter, however, "adhering to precedent 'is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right.'"

*United States v. Tualla*, 52 M.J. 228, 231 (C.A.A.F. 2000) (omission in the original) (quoting *Payne*, 501 U.S. at 827) (additional citation omitted). "Respecting *stare decisis* means sticking to some wrong decisions. . . . Indeed, *stare decisis* has consequence only to the extent it sustains incorrect decisions; correct judgments have no need for that principle to prop them up." *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 455 (2015) (citation omitted). "A party must present a 'special justification' for us to overrule prior precedent." *United States v. Blanks*, 77 M.J. 239, 242 (C.A.A.F. 2018) (quoting *Kimble*, 576 U.S. at 456).

In this case, at the time of Appellant's court-martial, the law had recognized the principle of preemption for decades; indeed, it is explicitly stated in the Manual for Courts-Martial under the heading, *"Limitations on Article 134." Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 91.(c).(5). In addition, the holding of *Jones* that a claim of preemption "cannot be waived by either a plea or failure to object" had been the law for over 15 years. 66 M.J. at 706. This court has followed this holding of *Jones* repeatedly in the years since. *See United States v. Dominguez-Sandoval*, No. ACM 40084, 2022 CCA LEXIS 203, at \*16 (A.F. Ct. Crim. App. 31 Mar. 2022) (unpub. op.); *United States v. Bailey*, No. ACM 39052, 2017 CCA LEXIS 639, at \*5–6 (A.F. Ct. Crim. App. 26 Sep. 2017) (unpub. op.); *United States v. Costianes*, No. ACM 38868, 2016 CCA LEXIS 391, at \*4 (A.F. Ct. Crim. App. 30 Jun. 2016) (unpub. op.); *United States v. Hill*, No. ACM 38848, 2016 CCA LEXIS 291, at \*4 (A.F. Ct. Crim. App. 9 May 2016) (unpub. op.). Thus, the *stare decisis* principle that favors a "settled" state of law weighs against reversing *Jones*. In addition, this court's consistent adherence to *Jones* also cuts against a conclusion that *Jones* itself has proven "unworkable" or "badly reasoned." *See Tualla*, 52 M.J. at 231 (citation omitted).

Moreover, under the doctrine of vertical *stare decisis*, courts must strictly follow the decisions issued by higher courts. *United States v. Andrews*, 77 M.J. 393, 399 (C.A.A.F. 2018) (citation omitted). The United States Supreme Court

explained vertical *stare decisis* as follows: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). As the Government conceded at oral argument, *United States v. Robbins*, 52 M.J. 159 (C.A.A.F. 1999), upon which *Jones* is based, remains good law. In the years since, the United States Court of Appeals for the Armed Forces (CAAF) has not reversed its holding in *Robbins* that "the preemption issue was not waived by the guilty plea or [the] appellant's failure to raise it at trial" because it was jurisdictional. *Id.* at 160. It is true that *Robbins* involved an assimilated crime charged under Clause 3 of Article 134, UCMJ, rather than charged under Clause 2 as in the instant case. However, I am not persuaded preemption applies differently with respect to Clause 3 as opposed to Clauses 1 and 2 such that it is unwaivable as to the former but not the latter— even if I were to consider the matter de novo free from *stare decisis* considerations, which I am not. Under any of the three clauses, the preemption doctrine applies the same way; it "prohibits the application of Article 134 to conduct covered by Articles 80 through 132." *MCM*, pt. IV, ¶ 91.(c).(5)(a). Moreover, in the 17 years since *Jones* was decided, the CAAF has not found occasion to correct this court's repeated allegedly incorrect misinterpretations of *Robbins*.

In this case, albeit at Appellant's suggestion, the Government erred by agreeing that Appellant would plead by exceptions and substitutions to an Article 134, UCMJ, specification that was preempted by Article 120c, UCMJ. In addition, the military judge erred by accepting the plea. This was a clear case of preemption, which under the binding authority of this court's precedent in *Jones* would not be waived by Appellant's guilty plea or failure to object. I am not persuaded these errors constitute "a 'special justification' for us to overrule prior precedent." *Blanks*, 77 M.J. at 242 (citation omitted).[2]

---

[2] The dissenting opinion suggests Appellant suffered no prejudice because he "achieved the specific result for which he successfully bargained." Article 66(d)(1), UCMJ, enjoins this court to affirm only such findings of guilty as it finds correct in law. 10 U.S.C. § 866(d)(1). For the reasons stated in the majority and concurring opinions, Appellant's conviction is not correct in law. Article 59(a), UCMJ, provides that a finding of guilty "may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." 10 U.S.C. § 859(a). I find sufficient prejudice in that Appellant was convicted of a supposed violation of Article 134, UCMJ, that was not a chargeable offense—particularly where Appellant did not admit to *intentionally* exposing himself, and the Article 134, UCMJ, "offense" avoided the mens rea requirement of Article 120c, UCMJ. *Cf. United States v. Kim*, 83 M.J. 235, 238

**B. Remedy**

In addition to setting aside the findings of guilty, the majority opinion dismisses Charge II and its Specification, without prejudice. I believe this is a valid and permissible remedy. *See* 10 U.S.C. § 866(f)(1)(B). However, I do not believe it is the most appropriate remedy.

The military judge should have rejected Appellant's guilty plea because, as described above, *as modified by Appellant's plea by exceptions and substitutions*, the resulting specification alleging a violation of Article 134, UCMJ, was preempted by Article 120c, UCMJ. If the military judge had properly refused to accept the plea, the Article 134, UCMJ, offense originally charged—which was not preempted by Article 120c, UCMJ—would have remained before the court-martial. The Government could have properly proceeded with its prosecution of that alleged offense. In my view, the most appropriate remedy would be to authorize a rehearing and remand the case for further proceedings consistent with this opinion, rather than dismissing Charge II and its Specification.[3]

However, we judges in the majority who agree the findings of guilty must be set aside are nevertheless unable to agree on this point as to the remedy. Because there is no one view as to the remedy that commands a majority of the panel, I believe the doctrine stated in *Marks v. United States*, 430 U.S. 188, 193 (1977), should control. Specifically, "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of [a majority of the court], 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. . . .'" *Id.* (omission in original) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)); *see also United States v. Brown*, 84 M.J. 124, 130 n.11 (C.A.A.F. 2024) (citing *Marks*). In this case, as I see it, the "narrowest grounds" would be setting aside the findings of guilty, without additionally dismissing Charge II and its Specification. Yet, my colleague in the majority and I are also unable to agree on this point, as to the *effect* of our disagreement as to the most appropriate remedy.

---

(C.A.A.F. 2023) (quoting *United States v. Care*, 40 C.M.R. 247, 251 (C.M.A. 1969)) (stating a guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts").

[3] I reach no conclusions as to the effect of this court's opinion on the plea agreement, or the status of the two specifications alleging violations of Article 120c, UCMJ, that were withdrawn and dismissed with prejudice in accordance with the plea agreement. *Cf.* R.C.M. 705(e)(4)(B) (stating a convening authority may withdraw from a plea agreement when, *inter alia*, "findings are set aside because a plea of guilty entered pursuant to a plea agreement is held improvident on appellate review").

Therefore, in the interest of judicial economy and timely appellate review, I reluctantly concur in dismissing Charge II and its Specification, without prejudice.


MORGAN, Judge (dissenting):

I write separately from my colleagues because I would uphold Appellant's sole conviction for indecent conduct, finding his unconditional guilty plea to a Clause 2, Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, offense waived his preemption claim. Alternatively, I would find his guilty plea survives a plain error analysis for want of substantial prejudice. I further would overrule this court's decision in *United States v. Jones*, 66 M.J. 704, 706 (A.F. Ct. Crim. App. 2008).

## A. Law

### 1. Preemption Doctrine

The constitutional power to define both federal and military offenses resides with the United States Congress. *United States v. Teters*, 37 M.J. 370, 373 (C.M.A. 1993); *see also United States v. Handford*, 39 F.3d 731, 735 (7th Cir. 1994) (observing "the principle that the power to define criminal offenses and prescribe punishments . . . belongs solely to the legislature"). As the United States Supreme Court explained in *Whalen v. United States*, 445 U.S. 684, 689 (1980), "within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress."

The Supremacy Clause states that the United States Constitution and the laws of the United States which shall be made in pursuance thereof, shall be the supreme law of the land.[1] Based in principles of federalism, the Supreme Court has cautioned that federal law should not preempt state laws unless there was a clear congressional purpose. *See Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 631 n.10 (2013); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 533 (1992) (Blackmun, J., concurring in part, concurring in the judgment in part, and dissenting in part). In *United States v. Curry*, our superior court held the preemption doctrine applies when (1) "Congress intended to limit prosecution for . . . a particular area" of misconduct "to offenses defined in specific articles of the Code," and (2) "the offense charged is composed of a

---

[1] U.S. CONST. art. VI.

residuum of elements of a specific offense." 35 M.J. 359, 360–61 (C.M.A. 1992) (internal citations omitted).[2]

### 2. Applicable Test

The provision of paragraph 2.c of the plea agreement in this case specifically states Appellant agreed "to waive all motions that may be waived in accordance with current legal precedent, public policy, and the Rules for Courts-Martial (R.C.M.s)." Appellant now argues for the first time on appeal that the Article 134, UCMJ, specification is composed of a residuum of the Article 120c, UCMJ, 10 U.S.C. § 920c, elements and is therefore, preempted.

An appellant's failure to preserve an issue at trial raises the question whether the appellant has forfeited or waived the issue on appeal. *See United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (additional citation omitted).[3] Appellate courts review forfeited issues for plain error; a valid waiver leaves no error to correct on appeal. *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (citation omitted).

An accused may intentionally relinquish a waivable objection in a plea agreement by including a provision waiving all waivable motions. *United States v. Day*, 83 M.J. 53, 56 (C.A.A.F. 2022). Additionally, a waiver by operation of law may result from an unconditional guilty plea. The United States Court of Appeals for the Armed Forces (CAAF) has held "[a]n unconditional guilty plea generally 'waives all defects which are neither jurisdictional nor a deprivation of due process of law.'" *United States v. Schweitzer*, 68 M.J. 133, 136 (C.A.A.F. 2009) (quoting *United States v. Rehorn*, 26 C.M.R. 267, 268–69 (C.M.A. 1958)).

The view that a preemption claim presents an unwaivable question of subject matter jurisdiction has been steadily eroded. Specifically, in *United States*

---

[2] This test resembles the multiplicity test, which also turns on legislative intent. Where Congress has expressed its intent, the question of multiple convictions may be readily addressed; however, as the United States Court of Appeals for the Armed Forces commented in *United States v. Albrecht*, 43 M.J. 65, 67 (C.A.A.F. 1995), such intent is "oft-sought-after but frequently elusive . . . ." In the absence of congressional intent, the Supreme Court, in *United States v. Blockburger*, 284 U.S. 299, 304 (1932), held that the test for determining if two distinct statutory provisions constitute separate offenses for double jeopardy purposes is whether each provision requires proof of an additional fact which the other does not.

[3] Waiver may also occur by operation of law. *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018).

*v. Cotton*, the Supreme Court held "a defective indictment does not deprive a court of jurisdiction." 535 U.S. 625, 630 (2002). The Supreme Court rejected an "elastic concept of jurisdiction" in favor of one defined by "a court's power to hear a case" and explained that "the objection that [an] indictment does not charge a crime against the United States goes only to the merits of the case." *Id.* at 630–31. Noting it was "freed from the view that indictment omissions deprive a court of jurisdiction, [the Court] proceed[ed] to apply the plain-error test . . . to respondents' forfeited claim." *Id.* at 631.

In *Lewis v. United States*, 523 U.S. 155 (1998), defendants were convicted of first-degree murder under Louisiana law as assimilated through the Assimilative Crimes Act (ACA).[4] The Supreme Court found the ACA did not properly assimilate the Louisiana statute and remanded the case for resentencing. *Id.* at 172–73. The Court's silence on the jurisdictional argument has been cited by numerous federal circuit courts as demonstrating the non-jurisdictional nature of the defendants' assimilation appeal.[5]

Three years prior to *Cotton*, our superior court addressed the preemption doctrine in relation to the ACA in *United States v. Robbins*, 52 M.J. 159, 160 (C.A.A.F. 1999). There, the appellant argued the offense of involuntary manslaughter by terminating the pregnancy of his wife was not cognizable under the UCMJ because it could not be assimilated under Article 134, UCMJ. The CAAF explained "if the offense was improperly assimilated, it was not cognizable by a court-martial," thus holding "that the preemption issue was not waived by the guilty plea or appellant's failure to raise it at trial." *Id.*

However, following *Cotton,* the CAAF observed that with respect to whether an issue was "jurisdictional," the Supreme Court had since "tried in recent cases to bring some discipline to the use of the term." *United States v. Humphries*, 71 M.J. 209, 213 (C.A.A.F. 2012) (quoting *Henderson v. Shinseki*, 562 U.S. 428 (2011)). The CAAF held "where defects in a specification are raised for the first time on appeal, dismissal of the affected charges or specifications will depend on whether there is plain error -- which, in most cases, will turn on the question of prejudice." *Id.* at 213–14 (citing *Cotton,* 523 U.S. at 631–32) (applying plain error review)) (additional citations omitted).

---

[4] 18 U.S.C. § 13(a).

[5] *See, e.g.*, *United States v. Twitty*, 859 Fed. Appx. 310, 313 (10th Cir. 2021) (reasoning that jurisdictionally, whether an offense is charged under the ACA or another provision of federal law does not matter); *United States v. Key*, 599 F.3d 469, 476–77 (5th Cir. 2010) (reviewing an assimilation claim for plain error because the error was not raised below and was a nonjurisdictional issue); *United States v. Hall*, 979 F.2d 320, 323 (3d Cir. 1992) (analogizing improper assimilation to an incorrect statutory citation in an indictment).

Following *Humphries*, the CAAF decided several cases warranting discussion. In *United States v. Warner*, the CAAF held "[w]hen not objected to at trial, defects in an indictment are reviewed for plain error." 73 M.J. 1, 3 (C.A.A.F. 2013) (citing *Cotton*, 535 U.S. 631). Under a plain error analysis, "[an a]ppellant has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused.'" *Id.*

In *United States v. Gleason*, 78 M.J. 473, 474 (C.A.A.F. 2019), the CAAF held a "novel" Article 134, UCMJ, charge of interfering with an emergency call failed to state an offense because the offense already existed inside Article 134's framework.[6] "Because [the a]ppellant did not challenge the specification at trial, [the CAAF] review[ed] his challenge to the 'novel' specification for plain error." *Id.* at 475 (citing *United States v. Tunstall*, 72 M.J. 191, 196 (C.A.A.F. 2013)). The issue was not framed as a "jurisdictional" one.[7]

In *United States v. Gladue*, the CAAF held the appellant's express waiver of any waivable motions in his pretrial agreement waived claims of multiplicity and unreasonable multiplication of charges and barred the appellant from asserting them on appeal. 67 M.J. 311, 312 (C.A.A.F. 2009). The CAAF reasoned, "[a] criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *Id.* at 314 (citing *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995)). "That includes double jeopardy, the basis of the multiplicity objection." *See id*. (citing *Mezzanatto*, 513 at 201); then citing *Ricketts v. Adamson*, 483 U.S. 1, 10 (1987) (double jeopardy defense waivable by pretrial agreement)). The Supreme Court has applied this

---

[6] The CAAF cited to the language of pt. IV, para. 60.c.(6)(c) of the *Manual for Courts-Martial, United States* (2012 ed.), which stated, "If conduct by an accused does not fall under any of the listed offenses for violations of Article 134 in this Manual (paragraphs 61 through 113 of this Part), a specification not listed in this Manual may be used to allege the offense."

[7] *United States v. Avery*, 79 M.J. 363, 366 (C.A.A.F. 2020), cited by the majority, concerned a litigated trial involving application of Article 134, UCMJ, to conduct covered by Articles 80 through 132, UCMJ. In that case, the CAAF held the offense of indecent language under Article 134, UCMJ, was not preempted by Article 120b, UCMJ, because the indecent language communicated was "simply not a sexual act or lewd act as contemplated by Article 120b(c), h(5)(C)[, UCMJ]."

"general rule" that presumes waiver in finding that appellants waived a broad array of constitutional claims. *New York v. Hill*, 528 U.S. 110, 114 (2000).[8]

## B. Analysis

In this case, Appellant negotiated a plea agreement wherein he originated a provision "to waive all motions that may be waived in accordance with current legal precedent, public policy, and the Rules for Courts-Martial (R.C.Ms)." This case does not present a situation where Appellant relied on misadvice from a military judge that would prevent waiver.[9] In addition, "an unconditional guilty plea generally 'waives all defects which are neither jurisdictional nor a deprivation of due process of law.'" *Schweitzer*, 68 M.J. at 136 (quoting *United States v. Rehorn*, 26 C.M.R. 267, 268–269 (C.M.A. 1958)). Numerous federal circuits are in accord that improper assimilation is not jurisdictional, but instead resembles a challenge to an indictment. These cases recognize that a case properly assimilated provides jurisdiction under the ACA, and a crime not properly assimilated provides jurisdiction under the federal statutes.[10] Either way, there is jurisdiction.

In *Robbins*, the CAAF concluded the preemption issue was not waived because an improperly assimilated state crime under Article 134, UCMJ, clause 3, related to subject-matter jurisdiction as incognizable by a court-martial. Because the instant case does not involve an assimilated offense, it does not squarely fall within *Robbins's* holding that improperly assimilated state crimes relate to subject matter jurisdiction. Second, the reasoning of post-*Robbins* federal circuit courts equally applies here, *i.e.*, a court-martial has the adjudicative capacity to hear Article 120c, UCMJ, offenses, as well as general disorder offenses under Article 134, UCMJ. There is jurisdiction in either case. It does not seem to follow that a court-martial has no jurisdiction to hear an Article 134, UCMJ, offense simply because it also has jurisdiction to hear an Article 120c, UCMJ, offense.

While *Gleason*, 78 M.J. at 474, involved presidential constraints contained in Article 134, UCMJ, with respect to novel offenses under clauses 1 and 2 of

---

[8] *See, e.g.*, *United States v. Gagnon*, 470 U.S. 522, 528 (1985) (right to be present at all stages of criminal trial); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (privilege against compulsory self-incrimination, right to jury trial, and right to confront one's accusers); *Levine v. United States*, 362 U.S. 610, 619 (1960) (closure of courtroom and right to public trial); *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938) (right to counsel); *Segurola v. United States*, 275 U.S. 106, 111 (1927) (right against unlawful search and seizure).

[9] *See United States v. Day*, 83 M.J. 53, 56 (C.A.A.F. 2022) (stating that "the military judge's advice to the appellant prevented the possibility of waiver").

[10] *See* cases cited *supra* at n.5.

Article 134, UCMJ, *vis-à-vis* specifically listed Article 134, UCMJ offenses, there was no discussion or inference the claim implicated subject-matter jurisdiction. Rather, the issue was framed as whether the challenged specification failed to state an offense and was reviewed for plain error.

Neither does a preemption claim present as more "jurisdictional" (and hence less waivable) than double jeopardy or the related multiplicity concept. Both preemption and multiplicity tests seek to ascertain congressional intent, given Congress's authority to create and define offenses. Both tests, depending on the state of the legislative record, turn to a "residuum of" or "separate" elements construction to ascertain congressional intent. Indeed, if a federal court exceeds its authority by imposing multiple punishments not authorized by Congress, "it violates not only the specific guarantee against double jeopardy, but also the constitutional principle of separation of powers in a manner that trenches particularly harshly on individual liberty." *Whalen*, 445 U.S. at 689. If this specific dual-function double constitutional protection is waivable, it seems to me a preemption claim, borne out of the constitutional structure and comity concerns, ought likewise to be. Nor does this case concern concepts of federalism in the relationship between military and state law; this is not a Clause 3, Article 134, UCMJ, prosecution. Neither has any unit of Government been commandeered by another.

While it can be argued in this case that Congress's prerogative is pitted against that of the President's delegated authority, Congress has not provided its clear and explicit purpose behind moving and re-grouping of "Indecency" offenses. As the majority observed, "Indecent Exposure" once resided in Article 134, UCMJ, before relocation to Article 120, UCMJ, and thereafter repositioning to its present home in Article 120c, UCMJ. Additionally, the legislative history behind Article 120c, UCMJ, falls short of demonstrating a clear congressional purpose to preclude prosecution of a servicemember for posing naked as well as holding his genitals in view of the public in a foreign country as a general disorder that discredits the service. The Senate Report accompanying the National Defense Authorization Act for Fiscal Year 2012 generally describes Article 120c, UCMJ, as stemming from "recommend[ations] by the Joint Service Committee on Military Justice and the Secretary of Defense to address deficiencies in existing law that have been identified by military courts." S. REP. O. 112-26, at 115 (2011). The Senate Armed Services Committee recommended the Senate to separate Article 120, UCMJ, into three separate UCMJ articles: Article 120, UCMJ; Article 120b, UCMJ, and Article 120c, UCMJ. *Id.* at 114–15. In *United States v. Avery*, 79 M.J. 363, 369 (C.A.A.F 2020), our superior court referred to this as "scant legislative history," which under these circumstances falls shy of the explicit congressional intent necessary to preclude Appellant's guilty plea to a general disorder in this case.

As for the residuum of the elements prong, it does appear that as negotiated, Appellant essentially pleaded, discounting the terminal elements, to an offense containing a lesser *mens rea* than that of Article 120c, UCMJ. However, it is also true that "simply because the offense charged under Article 134, UCMJ, embraces all but one element of an offense under another article does not trigger operation of the preemption doctrine. In addition, it must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way." *United States v. Kick*, 7 M.J. 82, 85 (C.M.A. 1979) (citations omitted). Previous cases have withstood preemption challenges though containing a lesser *mens rea* than an arguably greater offense. *See United States v. Picotte*, 30 C.M.R. 196, 199 (C.M.A. 1961) (finding unlawful detention under Article 97, UCMJ, 10 U.S.C. § 897, does not preempt kidnapping under Article 134, UCMJ, reasoning that "in no sense can a punitive Article prohibiting a lesser offense be considered as pre-empting the field of the greater"); *see also United States v. Taylor*, 38 C.M.R. 393, 395 (C.M.A. 1968) (malingering charge under Article 115, UCMJ, 10 U.S.C. § 915, did not preempt a charge under Article 134, UCMJ; while malingering required a specific intent to avoid work, duty, or service, intentional injury under Article 134, UCMJ, had "an objective orientation" designed to preserve good order and discipline, without necessarily considering the "mental attitude of the accused"); *United States v. Gaudet*, 29 C.M.R. 488, 490 (C.M.A. 1960) (larceny under Article 121, UCMJ, 10 U.S.C. § 921, does not preempt stealing from the mail); *United States v. Fuller*, 25 C.M.R. 405, 407 (C.M.A. 1958) (arson, under Article 126, UCMJ, 10 U.S.C. § 926, does not preempt fraudulent burning of a building).

Separated from its "jurisdictional" label, and presenting no more compelling reason not to treat inter-UCMJ preemption claims just as waivable as other constitutionally-derived protections, I would find Appellant's agreement to waive all waivable motions and enter an unconditional guilty plea waived his present claim.

In evaluating *stare decisis*, we consider "whether the prior decision is unworkable or poorly reasoned; any intervening events; the reasonable expectations of servicemembers; and the risk of undermining public confidence in the law." *United States v. Blanks*, 77 M.J. 239, 242 (C.A.A.F. 2018) (quoting *United States v. Quick*, 74 M.J. 332, 336 (C.A.A.F. 2015).

I would depart from our holding in *Jones*. First, with the understanding it is our superior court's prerogative to overrule its own decisions, I believe this court in *Jones* overread *Robbins*, which addressed whether a non-military offense was cognizable by a court-martial. Second, post-*Robbins* opinions from both the Supreme Court and our superior court have held defective specifications do not deprive a court of its adjudicative power. *See Cotton*, 535 U.S. at 631; *Humphries,* 71 M.J. at 213. Third, a determination that Appellant's claim

cannot be waived is inconsistent with numerous Supreme Court decisions permitting waiver of an array of constitutional protections, *see supra* note 8, including both individual protections as well as those designed to prevent aggrandizement by one branch of the Government at the expense of another. Finally, the originally charged masturbating offense in this case necessarily involved nudity; but Appellant negotiated a plea agreement wherein he was required to only explain he was naked in view of public onlookers. Appellant confirmed to the military judge that he was not accidentally or mistakenly in the doorway naked, there was a substantial risk he could be viewed, and that his conduct was indecent because he found the potential for being seen "sexually exciting," though others could merely have been disgusted. The real threat to public confidence in military law is explaining that as a result, all charges are dismissed as jurisdiction evaporated.

Assuming *arguendo* Appellant's claim is not waived and there is something for this court to review, then consistent with *Gleason*, *Cotton*, and *Humphries*, Appellant's claim, raised for the first time on appeal, should be reviewed for plain error. Given the "scant" legislative history indicating a clear congressional purpose to preempt, the transient nature of "Indecent Exposure," and the line of cases upholding Article 134, UCMJ, offenses against preemption challenges (*Picotte, Taylor, Fuller,* and *Gaudet*), the "plainness" of any error is not self-evident. Nonetheless, assuming plain error, though missed by all participants except perhaps trial defense counsel, the error only benefitted Appellant.

Material prejudice to a substantial right is evaluated by "reference to the nature of the violated right." *United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019). In *Humphries*, trial defense counsel failed to object to the omission of a terminal element on one of the charges and CAAF reversed the conviction finding a violation of the appellant's constitutional rights to notice. 71 M.J. at 211, 215. In this case, Appellant was originally charged with violating Article 120c, UCMJ, but negotiated a plea agreement wherein the Article 120c, UCMJ, offense would be withdrawn and dismissed with prejudice and he would knowingly and voluntarily plead to a modified Article 134, UCMJ, offense. Appellant does not, and cannot, argue he lacked notice of what he was to defend against when he took an active part in negotiating the language of the specification to which he pleaded guilty.

This case does not present as one involving prosecutorial abuse by virtue of redundant pleading. The Government was not seeking a higher punishment by dismissing two other Article 120c, UCMJ, offenses and agreeing to a sentence to confinement of no less than 30 days and no more than 270 days. Appellant could have no reasonable doubt his conduct was service discrediting,

and he admitted as much during his providence inquiry, telling the military judge:

> The women that witnessed me naked, as well as the local police, eventually became aware that I was a member of the United States Air Force. We, as military members, are held to a higher standard than members of the general public and committing misconduct as a military member tends to harm or discredit the reputation of the Air Force or the U.S. military as a whole.

In this case, the Government charged the Appellant with an offense under Article 120c, UCMJ. The Appellant negotiated a plea agreement that ensured that Article 120c, UCMJ, offense would be dismissed with prejudice and, in exchange, he would plead guilty to an Article 134, UCMJ, offense that the Appellant himself negotiated. Thus, not only did the Appellant fail to assert that the Article 134, UCMJ, offense was preempted by Article 120c, UCMJ, but he also specifically requested the Government modify the Article 134, UCMJ, specification, proceed on it alone, and dismiss the Article 120c, UCMJ, offenses. I would find his agreement to waive all waivable motions and enter an unconditional guilty plea waived his present complaint. But, as stated above, even if Appellant's failure to object amounted to no more than forfeiture, any error (plain or otherwise) did not prejudice Appellant as he achieved the specific result for which he successfully bargained.

I disagree with my colleagues and would overturn *Jones* and affirm the findings of guilty as to Charge II and its Specification, and therefore I dissent.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court